AO 91 (Rev. 5/85) Criminal Complaint                                      AUSA John C. McMillan, Jr.

# United States District Court

SOUTHERN _____ DISTRICT OF _____ FLORIDA _____

UNITED STATES OF AMERICA

v.

JASON SHERMAN,
RICHARD WHEELER, and
JODI WHEELER

(Name and Address of Defendant)

## CRIMINAL COMPLAINT

CASE NUMBER: 09-_8035_-JMH

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about _December 2008 through February 5, 2009_ in _____ Palm Beach _____ county, in the _____ Southern _____ District of _____ Florida _____ defendant(s) (Track Statutory Language of Offense)

did combine, conspire, confederate and agree with each other to knowingly and intentionally possess with intent to distribute fifty (50) grams or more of a mixture and substance containing a detectable amount of cocaine base,

in violation of Title _____ 21 _____ United States Code, Section(s) _841(a)(1), 841(b)(1)(A) and 846._

I further state that I am a(n) _____ Special Agent with DEA _____ and that this complaint is based on the following facts:

Please see attached Affidavit.

Continued on the attached sheet and made a part hereof:        ☒ Yes        ☐ No

_Signature of Complainant_
Felton M. Cameron, Special Agent
Drug Enforcement Administration

Sworn to before me and subscribed in my presence,
upon my finding of probable cause.

February 6, 2009
Date

at   West Palm Beach, Florida
City and State

JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer

'Signature of Judicial Officer

FILED by _____ D.C.

FEB 0 6 2009

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## AFFIDAVIT IN SUPPORT OF ARREST

I, Felton M. Cameron, Special Agent of the Drug Enforcement Administration (DEA), United States Department of Justice, being duly sworn, deposes and states:

1.      I have been employed as a Special Agent of the DEA since October 1996. During my employment with DEA, I have been assigned to the Miami Division Office and the Caribbean Division, San Juan Division Office. I am currently assigned to the West Palm Beach, Florida, Resident Office.

2.      During my career, I have conducted investigations and have been instructed in techniques dealing with the unlawful distribution of narcotics, possession with intent to distribute controlled substances, use of communication facilities to conduct narcotics transactions, maintaining a place for purposes of manufacturing, distributing or using controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846. Through my work with the DEA, I am familiar with the packaging, storage, transportation, distribution techniques, and street terminology associated with narcotics traffickers, including large-scale marijuana distribution. I am also familiar with narcotics traffickers' methods and techniques for collection of monies which represent the proceeds of narcotics trafficking, including money laundering, in violation of Title 18, United States Code, Section 1956.

3.      This affidavit is based upon an ongoing drug investigation, conversations with other law enforcement officers, information obtained through confidential sources, surveillance, training and experience and the events and circumstances as set forth below.

4.      This affidavit is being submitted in support of the arrest of Jason Sherman (DOB: 03-27-1981), who resides at 12134 Colony Preserve Drive, Boynton Beach, Florida, Richard Brian

Wheeler (DOB: 02-09-1959) and Jodi Wheeler (DOB: 12-19-1965), who both reside at 1828 Meadows Circle W, Boynton Beach, Florida. Because this affidavit is being submitted for the limited purpose of establishing probable cause for an arrest, it does not contain each and every detail about this investigation of which I am aware. The events described herein took place in Palm Beach County and the Southern District of Florida.

5.      During the month of December 2008, an undercover agent made two (2) purchases of Percocet, a controlled substance, in pill form from Jodi Wheeler. During these negotiations, Wheeler indicated that she was able to get cocaine from her source of supply, who she called "Jay". Wheeler stated that she has been dealing with "Jay" for about five (5) years.

6.      On January 8, 2009, the undercover agent purchased four (4) grams of cocaine hydrochloride from Wheeler. During this undercover purchase, an agent conducting surveillance observed a white male, driving a Chevy Avalanche with Florida license plate 751IHK arrive at the Wheelers' residence.  Agents followed this vehicle to 12134 Colony Preserve Drive, Boynton Beach, Florida. Based on this surveillance, agents were able to identify Jason Sherman as the driver of the Chevy Avalanche and the source of supply of the cocaine.

7.      On January 20, 2009, after several unanswered telephone calls, the undercover agent went to Jodi Wheeler's apartment and knocked on the door. Wheeler indicated that her phone was not working. The agent informed Wheeler that he/she was ready to purchase one (1) ounce of crack cocaine. Wheeler indicated that she had already spoken to "Jay" regarding the ounce of crack cocaine. Wheeler attempted to call "Jay", but "Jay" did not answer. Wheeler then received a call from "Jay". Wheeler told "Jay" that the undercover agent was there with the money. "Jay" advised that Wheeler that he was working on getting the ounce of crack cocaine. The undercover agent gave

Wheeler $1,350.00 and then left the apartment.

8.      At approximately 4:13 p.m., the undercover agent called Wheeler.  Wheeler informed the undercover agent that her source had not arrived with the cocaine yet.  At approximately 5:35 p.m., the undercover agent called Wheeler and told her that he/she was returning to the apartment to get the money he/she had fronted.  At approximately 5:42 p.m., agents observed a 2009 black colored Mercedes with Florida license plate 363WHR arrive and park in the vicinity of the Wheelers' apartment building.  Agents observed Jason Sherman exit the vehicle and walk directly to the Wheelers' apartment. At approximately 5:48 p.m., the undercover agent received a telephone call from Wheeler.  Wheeler informed the undercover agent that she had the crack cocaine and to come and get it.

9.      At approximately 5:54 p.m., agents observed Jason Sherman exit the Wheelers' apartment and meet with two (2) unknown black males in the parking lot.  Sherman and the two (2) unidentified black males were then observed walking to and then entering the Wheelers' apartment.

10.      At about same time as the two black males entered the apartment, the undercover agent received a call from Jodi Wheeler.  Jodi Wheeler asked the undercover agent if he/she had any triple A batteries for a scale.  A few minutes later, the undercover agent called Wheeler and reiterated that he/she did not want to meet any one else during this narcotics transaction.  Minutes later, agents observed the two (2) black males exit the apartment and get into a vehicle and leave the area.  Immediately after that, Jason Sherman was observed exiting the apartment and getting into the black colored Mercedes.

11.      After Sherman was observed leaving the area, the undercover agent returned to Wheeler's apartment.  Wheeler removed the crack cocaine from her freezer and handed it to the

undercover agent.  Wheeler handed the undercover agent a scale and the undercover agent weighed the crack cocaine.  The crack cocaine weighed approximately 30 grams.  The undercover agent returned the Movado type watch that Jodi Wheeler had given him/her for collateral.Agents field tested the purported crack cocaine with reacted positive for the presence of cocaine.

12.     During the week of January 26, 2009 the undercover agent made a series of telephone calls to Jodi Wheeler to organize a purchase of 3 ounces of crack cocaine from Jodi Wheeler.  Jodi Wheeler stated that her source "Jay" was out of town during the coming weekend but would be back on Monday (Feb 2nd 2009).  Jodi Wheeler explained that she would ask "Jay" if he would give the undercover agent a break on the price as he/she would be a major customer purchasing that type of amount of crack cocaine.  Conversations between Jodi Wheeler and the undercover officer confirmed that the purchase would occur on Thursday or Friday (February 5th or 6th 2009) of the following week.

13.     On February 4th 2009 the undercover agent and Jodi Wheeler had a conversation confirming the pending deliver (planned for the following day).  Wheeler stated that her source (Sherman) would come down 50.00 dollars on each ounce and that the total for the 3 ounces of crack would be 3,900.00 dollars at 1,300 per ounce.  The undercover agent and Jodi Wheeler confirmed that it would take place the following day.

14.     On February 5, 2009 at approximately 11:23 a.m. the undercover Agent made attempts to contact Jodi Wheeler at 561-(577-3247) to initiate the purchase, but the telephone call would go to her voice mail.  The undercover officer then telephoned Rick Wheeler (Jodi's husband) at 561-577-9943. The telephone was answered by Rick Wheeler who stated Jodi was sleeping.  Rick Wheeler confirmed that pending purchase of crack cocaine and clarified the reduction of cost for

each ounce by 50.00 dollars. Rick Wheeler then handed the telephone to Jodi Wheeler who stated she would contact "her guy" for delivery.

15.     At approximately 12:12 p.m. the undercover agent the drove to 1828 Meadows Circle W, Boynton Beach, Florida, and met with Jodi and Rick Wheeler within their apartment. Rick Wheeler stated that Jodi was currently on the telephone with her source and that he would be coming over within the hour. Upon conclusion of the telephone call Jodi Wheeler confirmed that her source confirmed the crack purchase and would be arriving shortly. The undercover agent then showed Rick Wheeler the U.S. currency he/she intended to use to purchase the 3 ounces of crack cocaine. The undercover advised Rick Wheeler that he would return when the source arrived to pick up the product. Agents maintained surveillance on Wheelers residence along with Sherman's residence of 12134 Colony Preserve Dr, Boynton Beach FL. At approximately 1:22 p.m. the undercover agent received a telephone call from Jodi Wheeler stating that her source was delayed. The undercover Agent advised Jodi Wheeler to advise her source that he/she needed it conducted by 4:00 p.m. Jodi Wheeler advised the undercover officer that she would notify her source of the time schedule. Jodi Wheeler stated that her source was awaiting a "cook" to process the product and that if "he" could not get it done by 4:00 p.m. "he" would cook it himself.

16.     At approximately 2:30 p.m. Agents observed a black colored Mercedes (FL 363-WHR) arrive at and park within the garage of Sherman's residence of 12134 Colony Preserve Dr, Boynton Beach FL.   At approximately 3:45 p.m. Agents observe the black colored Mercedes (Fl 363-WHR) leave Sherman's residence (12134 Colony Preserve Dr, Boynton Beach FL). Agents then observed the black Mercedes drive to the Publix shopping plaza and meet with two separate subjects. Agents had a clear view of the driver and only occupant of the aforementioned Mercedes confirming

it to be Jason Sherman. Surveillance units then followed the Mercedes north on Jog Road and lost visual contact within the unincorporated city of Boynton Beach area.

17.     Between 4:00 pm. And 6:00 p.m. a series of telephone calls were made between the undercover agent and Jodi Wheeler. During these conversations Jodi Wheeler stated that the subject was attempting to complete the product and would be on his way shortly to her residence. Jodi Wheeler also advised the undercover agent that her source had text messaged her advising it would be a few more minutes. During a subsequent call Jodi Wheeler advising her source would exiting I-95 and would be arriving shortly.

18.     On February 5, 2008, at approximately 6:05 p.m., law enforcement agents observed the aforementioned black in color Mercedes (363WHR), previously identified as being driven by Jason Sherman arrive at 1828 Meadows Circle W, Boynton Beach, Florida. At approximately 6:10 p.m., law enforcement agents observed Sherman exited the Mercedes, carrying a white box. Sherman went to apartment Bldg. 18, apartment 1828 and someone opened the door.

19.     At approximately 6:15 p.m., the undercover agent received a telephone call from Jodi Wheeler advising him/her to meet her husband (Richard Wheeler) in front of building #16 so she could get the money and conduct the purchase. Jodi Wheeler stated that the crack cocaine was at her apartment and described the product as "absolutely gorgeous". The undercover agent was advised by Jodi Wheeler that she did not want her source and him/her at the apartment at the same time. While the undercover agent was traveling to her development he/she received another call from Jodi Wheeler advising that her source was exiting her apartment and that he/she (undercover agent) could come straight to her apartment to receive the crack cocaine.

20.     At approximately 6:25 p.m., law enforcement agents observed Sherman exit the

Wheelers' apartment and walk to and enter the black Mercedes parked in front of her apartment building. Sherman remained within the vehicle to observe the undercover officer's arrival. At approximately 6:30 p.m., the undercover agent arrived at the Wheelers' residence. The undercover agent parked and exited his/her vehicle and went into Wheelers residence.

21.     Upon entering the Wheelers' apartment he/she observed Jodi Wheeler and Rick Wheeler seated on the sofa in the living room area. Rick Wheeler then opened a small box which had several layers of crack cocaine (half cookies). Jodi Wheeler and Rick Wheeler commented on how good the product appeared. The undercover agent then counted out 3,900.00 dollars (OAF) and handed it to Rick Wheeler who recounted the amount confirming its accuracy. The undercover agent was then handed the aforementioned white box containing crack cocaine and exited the Wheelers' residence.

22.     At approximately 6:40 p.m., the law enforcement observed the undercover agent exit the Wheelers' apartment and depart the area. At approximately 6:45 p.m., law enforcement personnel observed Sherman exit Wheelers apartment (1828) and begin walking towards his vehicle. At that this time, law enforcement personnel, in unmarked vehicles, began driving towards Sherman. Sherman observed the vehicle moving towards him and began to run. Subsequently, Sherman was observed running to the south of building 18 and running into some bushes. After Sherman was apprehended, law enforcement seized a eight  bags of cocaine,  eight (8) pills of hydrocodone and eight (8) xanax pills from the bushes that Sherman was observed running into. Sherman also had 2 cellular telephones on his person along with a large amount of U.S. Currency (some of which having the same serial numbers provided by DEA and the City of Delray Beach OAF).

23.     The undercover agent conducted a net weight of the crack cocaine purchased which weighed approximately 63 grams.  The undercover agent also conducted a field test of the crack cocaine purchased which produced a positive reaction for cocaine content.  I should note that the undercover agent utilized in this case has had extensive prior experience investigating persons involved in the sale and distribution of cocaine base, commonly known as "crack" cocaine, and is thus familiar with its appearance. The undercover agent advised your affiant that the 63 grams of the aforementioned substance which tested positive for cocaine is consistent, based on his training and experience with cocaine in "crack" cocaine form.

24.     Based upon the foregoing, your affiant submits that probable cause exists to believe that the defendants, Jason Sherman, Richard Wheeler and Jodi Wheeler, conspired to knowingly and intentionally possess with intent to distribute fifty (50) grams or more of a mixture and substance containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A) and 846.

_____
Felton M. Cameron
Special Agent, Drug Enforcement Administration


SWORN TO AND SUBSCRIBED BEFORE
ME THIS 6TH DAY OF FEBRUARY, 2008,
AT WEST PALM BEACH, FLORIDA.

_____
JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE

# **BOND RECOMMENDATION**

<u>JASON SHERMAN</u>
Defendant

<u>Pretrial Detention</u> is recommended as to defendant.

_____
JOHN C. McMILLAN, JR.
ASSISTANT UNITED STATES ATTORNEY

# **BOND RECOMMENDATION**

## RICHARD WHEELER
Defendant

Pretrial Detention is recommended as to defendant.

JOHN C. McMILLAN, JR.
ASSISTANT UNITED STATES ATTORNEY

# **BOND RECOMMENDATION**

### JODI WHEELER
Defendant

Pretrial Detention is recommended as to defendant.

JOHN C. McMILLAN, JR.
ASSISTANT UNITED STATES ATTORNEY

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

No.   09- *8035* -JMH

UNITED STATES OF AMERICA

vs.

**JASON SHERMAN,**
**RICHARD WHEELER, and**
**JODI WHEELER,**

               **Defendants.**

_____/

## CRIMINAL COVER SHEET

1.    Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?   _____ Yes  _X_ No

2.    Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?   _____ Yes  _X_ No

Respectfully submitted,

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

BY: _____

JOHN C. McMILLAN, JR
ASSISTANT UNITED STATES ATTORNEY
Admin No. A5500228
500 S. Australian Avenue, Suite 400
West Palm Beach, FL 33401-6235
Tel:  (561) 820-8711
Fax: (561) 820-8777
John.McMillan@usdoj.gov